UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DANA A. BELMONTEZ, | ) Case No. 2:17-03024-JDE |
| Plaintiff, | ) MEMORANDUM OPINION AND ) ORDER |
| v. | ) |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

**I.**

**INTRODUCTION**

Plaintiff Dana A. Belmontez ("Plaintiff") filed a complaint on April 21, 2017, seeking review of the denial of her application for supplemental security income ("SSI") by the Commissioner of Social Security ("Commissioner"). Dkt. No. 1. Pursuant to consents of the parties, the case has been assigned to the undersigned Magistrate Judge for all purposes. Dkt. Nos. 11, 12. Consistent with the Court's Procedures Order (Dkt. No. 9), on December 19, 2017, the parties filed a Joint Stipulation addressing their respective positions. Dkt. No. 17 ("Jt. Stip."). The matter is now ready for decision.

## II.

## BACKGROUND AND ADMINISTRATIVE PROCEEDINGS

On July 22, 2013, Plaintiff applied for SSI alleging disability starting May 29, 2011. Administrative Record ("AR") 154-63. After her application was initially denied (AR 105-10), Plaintiff requested an administrative hearing. AR 111. Plaintiff, represented by counsel, appeared and testified at a hearing before an Administrative Law Judge ("ALJ") on April 27, 2015. AR 58-92.

On August 12, 2015, the ALJ denied Plaintiff's claims. AR 38-54. The ALJ found no substantial gainful activity since July 22, 2013, the date of application, and found that Plaintiff had the following severe impairments: Grave's Disease/Hashimoto's Thyroiditis; status/post radioactive iodine treatment with residual diminished field of vision on the left eye; degenerative disc disease of the cervical spine; degenerative disc disease of the lumbar spine with spondylolisthesis; sciatica; right hip sprain; arthritis of the left hip; left shoulder impingement; biceps tendinosis; hypertension; hyperlipidemia and obesity. AR 43. The ALJ found that none of the impairments, or combination of impairments, met or equaled a listed impairment and found that Plaintiff had a residual functional capacity ("RFC") to perform light work, but with the following non-exertional limitations: "[Plaintiff] can only frequently climb ramps and stairs, and occasionally ladders, ropes and scaffolds. She can frequently balance, stoop, kneel, crouch, and crawl. The [Plaintiff] can perform work that requires up to occasional field of vision." AR 46, 48.

The ALJ concluded that Plaintiff was capable of performing past relevant work as an insurance and benefits clerk and therefore was not disabled. AR 53-54. Plaintiff requested review of the ALJ's decision by the Appeals Council on October 7, 2015. AR 33-35. The Appeals Council denied the request on February 21, 2017. AR 1-4. Plaintiff then commenced this action.

# III.
# LEGAL STANDARD

## A. Standard of Review

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision denying benefits to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence" is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Gutierrez v. Comm'r Soc. Sec. Admin., 740 F.3d 519, 522-23 (9th Cir. 2014) (citations and internal punctuation omitted). The standard of review of a decision by an ALJ is "highly deferential." Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1002 (9th Cir. 2015) (citation omitted). Section 405(g) permits a court to enter a judgment affirming, modifying, or reversing and remanding the Commissioner's decision. 42 U.S.C. § 405(g).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (court will uphold Commissioner's decision

when evidence is susceptible to more than one rational interpretation). However, the Court only reviews the reasons provided by the ALJ in the disability determination, and may not affirm the ALJ on a ground upon which the ALJ did not rely. Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (citation omitted); see also Orn, 495 F.3d at 630 (citation omitted).

Lastly, even if an ALJ erred, the decision will be upheld if the error was inconsequential to the ultimate non-disability determination, or where, despite the error, the ALJ's path "may reasonably be discerned," even if the ALJ explained the decision "with less than ideal clarity." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citations, internal punctuation omitted).

### B. Standard for Determining Disability Benefits

When the claimant's case has proceeded to consideration by an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. See Molina, 674 F.3d at 1110 (citing, inter alia, 20 C.F.R. §§ 404.1520(a), 416.920(a)). First, the ALJ considers whether the claimant currently performs "substantial gainful activity." Id. If not, the ALJ proceeds to a second step to determine if the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months. Id. If so, the ALJ proceeds to a third step to determine if the impairments render her disabled because they "meet or equal" any of the listed impairments set forth in the regulations. See Rounds, 807 F.3d at 1001. If the claimant's impairments do not meet or equal a "listed impairment," before proceeding to the fourth step, the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from her impairments. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Social Security Ruling ("SSR") 96-8p. After determining the RFC, the ALJ proceeds to the fourth step and determines whether the claimant has the RFC to perform her past relevant work, either as she performed it

when she worked in the past, or as that same job is generally performed in the national economy. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016) (citing, inter alia, SSR 82-61); see also 20 C.F.R. §§ 404.1560(b), 416.960(b).

If the claimant cannot perform her past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. See 20 C.F.R. §§ 404.1520(g), 416.920(g); Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). If the claimant can do other work, she is not disabled; if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. See Tackett, 180 F.3d at 1099 (citing 20 C.F.R. § 404.1560(b)(3)); see also 20 C.F.R. § 416.960(b)(3). The claimant generally bears the burden at each of steps one through four to show that she is disabled or that she meets the requirements to proceed to the next step; the claimant bears the ultimate burden to show that she is disabled. See, e.g., Molina, 674 F.3d at 1110; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). However, at step five, the ALJ has a "limited" burden of production to identify representative jobs that the claimant can perform that exist in "significant" numbers in the economy. See 20 C.F.R. §§ 404.1560(c)(1)-(2), 416.960(c)(1)-(2); Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012).

**IV.**

**DISCUSSION**

The parties present one disputed issue: "[w]hether the ALJ properly rejected [Plaintiff's] pain and symptom testimony." Jt. Stip. at 4.

**A. <u>Evaluation of Subjective Symptom Testimony</u>**

Plaintiff argues that the ALJ failed to provide specific, clear, and convincing reasons, supported by substantial evidence, for rejecting her subjective symptom testimony. Id. at 7. The Commissioner asserts that the

ALJ properly discounted Plaintiff's testimony. Id. at 12.

1. Applicable Law

An ALJ's assessment of symptom severity and claimant credibility is entitled to "great weight." See Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989). Where a disability claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, and there is no evidence of malingering, the ALJ must provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." Treichler v. Comm'r Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (citation and quotation omitted); Lingenfelter, 504 F.3d at 1036; see also 20 C.F.R. § 404.1529(a).[1] The ALJ may consider, among other factors, (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties. Rounds, 807 F.3d at 1006.

The ALJ's findings "must be sufficiently specific to allow a reviewing

---

[1] After the ALJ's decision, SSR 16-3p went into effect. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p provides that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character" and requires that the ALJ consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. Id.; see also Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017). Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p, 2016 WL 1119029, at *10.

court to conclude that the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (citation omitted). However, if the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

2. Analysis

The ALJ determined that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . [her] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible . . . ." AR 51.

The reasons supporting the ALJ's decision to discount Plaintiff's subjective symptom testimony are not clearly enumerated in the ALJ's decision. In her portion of the Joint Stipulation, the Commissioner identifies five separate grounds relied upon by the ALJ in discounting Plaintiff's testimony: (1) inconsistencies with the objective medical evidence; (2) inconsistency with the testimony of examining and State Agency doctors; (3) inconsistencies within Plaintiff's own statements; (4) Plaintiff's failure to seek treatment for her symptoms; and (5) Plaintiff's failure to follow recommended treatments. Jt. Stip. at 14-15 (citing, *inter alia*, AR 44-45, 49-52). The Court views the Commissioner's identification of some of the grounds as somewhat expansive, but will address each ground identified by the Commissioner.

a. Inconsistency with Objective Medical Evidence

The ALJ found that the objective medical evidence did support not support Plaintiff's claims of disabling symptoms and pain beyond what was accounted for by the ALJ in the RFC. AR 50.

The ALJ recited that Plaintiff claimed she was unable to perform even sedentary work, and suffered from back, neck and shoulder pain, among other

7

ailments. AR 48. The ALJ observed that Plaintiff had previously complained of lumps on her neck (AR 50); however, upon examination via ultrasound, her neck was found to be normal and no lumps were found. AR 49-50, 268, 271. Plaintiff complained of hip pain and hearing a "pop"; however, an x-ray of the hip was unremarkable and Plaintiff had a full range of motion of the hip upon examination, albeit with some self-reported pain. AR 345. While Plaintiff complained of chronic back pain, the ALJ highlighted treatment notes from October 2013 indicating that, in evaluating both the lumbar and cervical spine, "[t]here is no evidence of muscle spasm" or tenderness and the "[r]ange of motion, consisting of forward flexion, extension, lateral flexion and rotation is within normal limits." AR 49-50, 242. During the same consultation, the examining physician noted that x-rays of the lumbar spine showed moderate degenerative disc disease at L5-S1, but that "[o]bjectively, [Plaintiff] has good range of motion of the back." AR 244. Further, her range of motion in her upper extremities – shoulders, elbows, wrists, and hands – was unremarkable. AR 243. Though an MRI did demonstrate that Plaintiff suffered from severe degenerative disc disease (AR 349), this was noted by the ALJ in his decision and accounted for in the ALJ's assessment of Plaintiff's RFC. AR 43, 48.

     The ALJ also recounted other objective medical evidence demonstrating unremarkable findings relative to Plaintiff's shoulders and upper extremities (AR 49-50, 243, 245), undermining Plaintiff's complaints of shoulder and neck pain. AR 81-83, 291, 295. The ALJ noted that while Plaintiff reported to one physician on September 29, 2014, that she had chronic pain in her left shoulder that had been treated for several years with no improvement, she had told another physician on September 22, 2014, that "overall her shoulder pain is improving." AR 50, 51, 291, 344. Plaintiff had made similar remarks of improvement in July and August of the same year following epidural injections to her left shoulder. AR 345, 346.

Although Plaintiff does not in the Joint Statement appear to take direct issue with the extensive objective medical evidence suggesting the conditions are reasonably well-managed and largely unremarkable (see AR 242-45, 246, 247, 252, 255-56, 266, 268, 271, 272, 273, 275, 278, 280, 287, 289, 291, 293, 295, 297, 304, 343-49), Plaintiff does contend that an MRI performed in January and February of 2016, after the ALJ's decision, bears upon Plaintiff's condition and provides evidence of disability. Jt. Stip. at 8-9. The Appeals Council noted its receipt of the imaging results, but explained that it would not consider them, as they had no bearing on whether Plaintiff was disabled on or before the date of the ALJ's decision. AR 2. Plaintiff asserts that there is "no indication that any significant changes occurred after the hearing and before the imaging was taken." Jt. Stip. at 10. However, as there was no evidence provided by Plaintiff other than the MRI, the absence of "indications" of "significant changes" is not surprising. In essence, Plaintiff asked the Appeal Council, and now this Court, to speculate as to the significance of the new MRI to Plaintiff's status during the relevant period. The Court declines to so speculate; there is no evidence that ties the 2016 MRI to the relevant time period, and the Court declines to consider it. See Brewes v. Comm'r Soc. Sec. Admin., 682 F.3d 1157, 1162 (9th Cir. 2012) (evidence submitted after the ALJ's initial decision can be considered only if it "relates to the period on or before the ALJ's decision.").

Although the evidence is not in and of itself a sufficient basis upon which to discount subjective symptom testimony, the ALJ was entitled to consider the lack of objective medical evidence in assessing Plaintiff's subjective complaints. See Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); Lingenfelter, 504 F.3d at 1040 (in determining credibility, an ALJ may consider "whether the alleged

9

symptoms are consistent with the medical evidence").

### b. Mental Limitations/Medical Opinions

The Commissioner asserts that one of the bases for the ALJ's discounting of Plaintiff's subjective symptom testimony is that the ALJ gave "greater weight to the opinions of the examining and State Agency doctors as to Plaintiff's alleged mental limitations." Jt. Stip. at 14, 17-18 (citing AR 44-45, 49). However, the specific pages of the record cited by the Commissioner do not appear to relate to the ALJ's discounting of Plaintiff's subjective symptoms, but instead predominantly relate to the step two analysis regarding assessing severe versus non-severe impairments in the context of mental impairments. See AR 44-45 (step two analysis). The Court has independently reviewed the ALJ's entire discussion supporting his decision to discredit Plaintiff's subjective symptom testimony, and it does not appear that the ALJ discussed Plaintiff's mental health symptoms in that analysis. See AR 50-51. Thus, it does not appear that opinions regarding Plaintiff's mental limitations, as opposed to physical limitations, were expressly part of the ALJ's decision to discount her subjective symptoms. This Court will only rely upon reasons expressly relied upon by the ALJ in affirming a denial of disability. See Garrison, 759 F.3d at 1010. As a result, this ground offered in the Joint Statement by the Commissioner is not a specific, clear and convincing reason to support the ALJ's decision, nor is it supported by substantial evidence.

### c. Alleged Inconsistencies in Plaintiff's Statements

The Commissioner asserts that the ALJ cited "inconsistencies between Plaintiff's statements and the record." Jt. Stip. at 14, 18-19. However, as with the mental limitations discussed above, much of the citation to the record by the Commissioner refers to analyses conducted by the ALJ on other issues, not his discussion of discounting subjective symptom testimony. See Jt. Stip. at 18-19 (citing AR 48 (vision loss) and AR 45 (forgetfulness)). The only items cited

by the Commissioner that were actually addressed by the ALJ as supporting his decision to discount Plaintiff's subjective symptom testimony which are not addressed in other portions of this opinion, relate to Plaintiff's activities of daily living. See Jt. Stip. at 18-19 (citing AR 51).

With respect to the activities of daily living, the ALJ stated that in June 2014 Plaintiff reported she was able to "'take care of her daily chores most days'" but at the hearing, she testified that she "'cannot stand to wash dishes, does not cook and cannot vacuum.'" AR 51 (citations omitted). Based on that summary, the ALJ found that "[o]verall, at the hearing, [Plaintiff] reported limitations that are inconsistent to those which she reported to her physicians over the span covered by the record." AR 51. The Court finds that the ALJ's conclusion is not supported by the evidence cited and lacks the specificity required by the Ninth Circuit. See Burrell v. Colvin, 775 F.3d 1133, 1138 (9th Cir. 2014) (an ALJ must "elaborate on *which* daily activities conflicted with *which* part of Claimant's testimony") (emphasis in original). Thus, the purported inconsistencies in Plaintiff's reported activities of daily living did not constitute a specific, clear and convincing reason, supported by substantial evidence upon which to discredit her subjective symptom testimony.

### d. Unjustified Failure to Obtain Treatment

The ALJ cited times when Plaintiff did not seek treatment despite claims of pain or limitations as a basis for discrediting her symptom testimony.[2] AR 50-51 (referencing not seeing a specialist for pain management, left-side

---

[2] The ALJ also noted that Plaintiff only relied upon over-the-counter pain medication (AR 50) but did not assert that her decision to do so was in contravention to medical advice. To the extent such treatment could be considered evidence of conservative treatment warranting a decision to discount testimony regarding the severity of an impairment (see, e.g., Parra v. Asture, 481 F.3d 742, 750-51 (9th Cir. 2007) ("evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment")), the ALJ did not make a finding on that basis, and thus the Court cannot rely upon it. See Garrison, 759 F.3d at 1010.

11

numbness, ophthalmology, and mental health counselling).

The "case law is clear that if a claimant complains about disabling pain but fails to seek treatment . . . an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated." Orn, 495 F.3d at 638; see also Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (an inadequately explained failure to seek treatment may serve as the basis for an adverse finding regarding subjective symptom testimony unless there are good reasons for not doing so). However, "[d]isability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds. Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995).

Plaintiff argues that because she repeatedly lost her Medi-Cal coverage, she had "difficulty getting appointments with specialists," which, Plaintiff argues, should not result in denial of a claim, citing Gamble. Jt. Stip. at 11-12.

Unfortunately, the record is not entirely clear on the issues of precisely when and why Plaintiff lost insurance coverage, and how that affected her scheduling appointments. Plaintiff testified that she periodically lost medical insurance coverage because: her husband earned "too much money"; "some kind of paperwork" problem; and unspecified "budget cuts," though the longest period she was uncovered was six months. AR 68-69, 84. With respect to mental health counselling, Plaintiff claimed she terminated her relationship with a mental health professional because "wouldn't be able to see her anymore" in the future when she ceased receiving aid in the form of food stamps. AR 73. Plaintiff attributed her difficulties and failures to obtain specialized treatment on these lapses in insurance coverage. See, e.g., AR 67 (could not schedule neurologist because of lost Medi-Cal coverage); 68 (could not get blood workup because of lost coverage); 72 (endocrinologist could not perform certain test because of lost coverage); 73-74 (could not see neurologist-ophthalmologist because of lost coverage).

The implication from Plaintiff's testimony, made express in the Joint Statement, is that Plaintiff could not have afforded the treatments without Medi-Cal coverage, and the repeated gaps caused by the repeated cancellation of her coverage caused "difficulties" in scheduling appointments. However, neither the ALJ nor Plaintiff's counsel asked follow-up questions to determine precisely when her coverage lapsed and whether those dates correlated with unscheduled treatments and/or consultations. Instead, the records reflect only Plaintiff's general testimony, unadorned by a specific timeline.

Based upon the record before it, the Court finds that Plaintiff has, through her unchallenged testimony at the hearing, sufficiently claimed that she did not obtain the treatments at issue because of an inability to pay for such treatment. As a result, those failures to seek treatment could not form the basis of a denial of benefits under Gamble.

### e. Failure to Follow Treatment Recommendations

The fifth purported basis identified by the Commissioner as having been relied upon by the ALJ to discount Plaintiff's symptom testimony is her purported "failure to follow recommended treatment." AR 50. In support of his finding as to this ground, the ALJ identified: (1) the taking, or not taking, of thyroid medication (AR 51); and (2) physical therapy and the lack thereof (AR 50). Plaintiff argues that the ALJ's citations in support of this reason takes evidence out of context. Jt. Stip. at 11.

As to thyroid medication, the ALJ asserted that Plaintiff's "thyroid levels are in the abnormal range when [Plaintiff] fails to take her thyroid medication" (AR 51), but fails to note Plaintiff's testimony that she perceived that she had a reaction to radioactive iodine treatment for her thyroid-related Grave's disease which she believed resulted in "a lot of failing things happening ever since that," including problems with her left eye, vision, and "left side going numb" and overall "my vision, everything went crazy on me." AR 66-67. With respect

to physical therapy, the ALJ cites to one medical record dated June 17, 2014 in which Plaintiff related that physical therapy helped "her back a little bit" but recited that she still has pain in her back as well as shooting pain in her legs, and "some new onset pain in the neck and left shoulder," which apparently also was not helped by physical therapy. AR 349. Further, in a report dated less than a month later, Plaintiff indicated that pain had "gotten worse" after physical therapy. See AR 297 (reported dated July 10, 2017). Roughly ten weeks later, Plaintiff again reported that "physical therapy has not helped." AR 344 (report dated September 22, 2014). The record thus shows a single reference to physical therapy helping one (of many) areas "a little bit," contrasted with multiple other records, close in time, reflecting that physical therapy was not helping. The Court must review the record as a whole, in context. Lingenfelter, 504 F.3d at 1035 (court may not affirm "simply by isolating a specific quantum of supporting evidence").[3]

Viewing the record as a whole, the Court finds that the ALJ's reliance upon "failure to follow treatment recommendations" as an independent basis to discredit Plaintiff's subjective symptom testimony is not supported by substantial evidence.

**B. Remand is Appropriate**

The decision whether to remand for further proceedings is within this Court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended). Where no useful purpose would be served by further

---

[3] The ALJ also cited to a medical record reflecting that Plaintiff should drink more water to avoid dehydration. AR 51. The ALJ failed to tie this reference to any medical issue other than dehydration – a difficulty that is not identified as part of Plaintiff's primary subjective symptoms – nor does it reflect that Plaintiff ignored or failed to follow the medical advice. To the extent the failure to drink sufficient water is cited as a basis for discrediting Plaintiff's subjective symptom testimony, the Court finds it is both not a specific, clear or convincing reason and is not supported by substantial evidence.

administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); Harman, 211 F.3d at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). A remand is appropriate, however, where there are outstanding issues that must be resolved before a determination of disability can be made and it is not clear from the record that the ALJ would be required to find the claimant disabled and award disability benefits. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003).

The Court finds that the four of the five grounds cited by the Commissioner as supporting the ALJ's decision to discredit Plaintiff's subjective symptom testimony are either invalid grounds, are not specific, clear and convincing, or are not supported by substantial evidence. Further, the only ground that is supported by substantial evidence, the lack of support by the objective medical evidence, cannot, as a matter of law, be used alone to discount subjective symptom testimony. As a result, the Court finds that the ALJ erred in discounting Plaintiff's subjective symptom testimony and further finds that the error was not harmless as a matter of law.

Remand for further administrative proceedings is warranted because, among other reasons, outstanding issues must be resolved before a determination of disability can be made and it is not clear from the record that the ALJ would be required to find Plaintiff disabled and award disability benefits. On remand, the ALJ shall reassess Plaintiff's subjective symptom testimony in light of SSR 16-3p, and conducted whatever further proceedings and make whatever further findings as may be warranted. See n.1, supra.

## V.

## ORDER

Pursuant to sentence four of 42 U.S.C. § 405(g), IT THEREFORE IS

15

ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this Order.

Dated: February 13, 2018

_____
JOHN D. EARLY
United States Magistrate Judge